UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| FELTON SEALEY, #644503, | Case No.   2:18-cv-00168 |
| Plaintiff, | Hon.  Robert J. Jonker<br>Chief U.S. District Judge |
| v. | |
| B. ROSEBROCK, et al., | |
| Defendants. | |
| _____/ | |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This is a civil rights action brought by state prisoner Felton Sealey pursuant to 42 U.S.C. § 1983.  Sealey is confined at the Chippewa Correctional Facility (URF).  Sealey alleges that Defendants violated his rights by delaying his receipt of dental care for a cracked tooth.  Defendants are dental assistant B. Rosebrock and URF Health Unit Manager Patricia Lamb.

Sealey initially named three other Defendants.  On November 7, 2018, the Court dismissed those Defendants without prejudice for misjoinder.  (ECF No. 5.)  On February 27, 2020, Defendants Rosebrock and Lamb filed a motion for summary judgment.

Defendant Rosebrock argues that as a dental assistant she does not diagnose or treat patients.  She says that her involvement with Sealey was limited to scheduling Sealey to see a dentist on three occasions and assisting Dr. Weiss in April of 2018.  Defendant Lamb argues that she never met or treated Sealey and that her

1

only involvement was responding to Sealey's step II grievances. Defendants argue that they are entitled to qualified immunity on Sealey's Eighth Amendment claims and that his gross negligence claim should be dismissed.

Sealey argues that he needlessly suffered in pain due to his swollen and infected tooth and that Defendants denied him care and treatment. Sealey says that the dentist should not have recommended a tooth extraction – a decision he also attributes to Defendant Rosebrock because she works closely with the dentist. He also asserts that it should not have taken nearly a year to restore his tooth. (ECF No. 29, PageID.232.)

The undersigned has reviewed the materials filed by the parties. It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss the case.

## II. Factual Allegations

Sealey says he cracked a tooth while eating on January 21, 2018. (ECF No. 1, PageID.9.) Sealey alleges that, on January 23, 2018, Defendant Rosebrock informed him of his placement on the dental examination list. (*Id*.) On January 29, 2018, Sealey says he made another request for a dental examination. (*Id*.) Defendant Rosebrock informed Sealey on January 30, 2018, that he was placed on the dental examination list. (*Id*.) Sealey complained of tooth pain again on February 6, 2018, but received no response. (*Id*.)

Sealey says that a nurse looked at his tooth on March 4, 2018, and confirmed that it was chipped but told him that the dental hygienist was on vacation. (*Id*. at

2

PageID.9-10.) Defendant Lamb responded to Sealey's grievance by informing Sealey that he will be seen "when an appointment is available, as prioritized by policy." (*Id.* at PageID.10.) Sealey wrote a kite on March 20, 2018, stating that while eating he discovered a piece of his broken tooth. (*Id.*) Sealey was informed by hygienist Michaels that he would be placed on the list for evaluation. (*Id.*)

Sealey continued to complain by writing a "kite to dental." (*Id.*) Sealey was examined on April 11, 2018. (*Id.*) During his exam, Dr. Weiss informed him that the tooth should be pulled. (*Id.*) Sealey refused that recommendation. (*Id.*) Three months later, in July of 2018, Sealey was seen by another dentist who cleaned and repaired his tooth. (*Id.*)

Sealey contends that Defendants Rosebrock and Lamb were deliberately indifferent to his need for dental treatment and pain medication, in violation of the Eighth Amendment. He also claims that Defendants Rosebrock and Lamb were grossly negligent under state law.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*,

3

421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

**IV. Qualified Immunity**

Defendants argue that they are entitled to the defense of qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier*

4

*v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the undersigned's opinion Defendants are entitled to the defense of qualified immunity from liability.

### A. Eighth Amendment Legal Standards

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent

5

to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that **delay in medical treatment** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition adequately**, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

6

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

7

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).

This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### B. Medical Evidence

On January 21, 2018 Sealey submitted a healthcare request for dental care due to sensitivity caused by breaking a tooth while eating. (ECF No. 28-2, PageID.138.) On January 23, 2018, the date she received the request, Defendant Rosebrock placed Sealey on the dental examination list. (*Id.*, PageID.139.) Sealey sent a second health care request dated January 29, 2018, complaining of discomfort and pain and because he had "submitted a Health Care Request form weeks ago." (ECF No. 28-3, PageID.141.) Defendant Rosebrock again placed Sealey on the dental examination list and noted he already was on the list. (*Id.*, PageID.142.)

On March 4, 2018, Sealy submitted a health care request indicating that he was "still experiencing extreme [tooth] pain." (ECF No. 28-4, PageID.144.) He was examined that day by nurse Bennett. (*Id.*, PageID.145.) Nurse Bennett noted that Sealey had a chipped tooth and gave him Motrin and referred him to the dental clinic. (ECF No. 28-5, PageID.147-148.)

On March 8, 2018, Sealey was called to the dental clinic. It was noted that Sealy experienced "spontaneous pain, not continuous." (ECF No. 28-6, PageID.152.) The on-call dentist prescribed 30 tablets of penicillin and 120 tablets of Acetaminophen. (*Id.*) On March 20, 2018, Sealey made another request for dental care, but did not state he was in pain. (ECF No. 28-8, PageID.158.) On March 23, 2018, Sealey was scheduled for a dental examination. (*Id.*, PageID.159.)

On April 8, 2018, Sealey made another health care request. (ECF No. 28-9, PageID.161.)

10

> **I have the following problems/symptoms:** Due to your Deliberate indifference to the problem I'm having with my tooth and your choice not to properly treat it. it has Now progressed to a point that has limited my ability to eat. and its causing me undue pain and Suffering.

(*Id.*) On April 10, 2018, Defendant Rosebrock scheduled Sealey for a dental examination the next day. (*Id.*, PageID.162.) Sealey was examined by Dr. Weiss on April 11, 2018. (ECF No. 28-6, PageID.153.) Dr. Weiss noted a broken filling with decay and recommended extraction. (*Id.*) Sealey did not want his tooth extracted. Sealey did not make any more requests for dental care.

On July 11, 2018, Sealey had his teeth cleaned and did not make any complaints of pain. (*Id.*, PageID.154.) On July 19, 2018, a dentist created a treatment plan that included refilling the tooth with a broken filling. (*Id.*) On December 11, 2018, Sealey's tooth was restored.[1] (*Id.*)

### 1. Defendant Rosebrock

Defendant Rosebrock had limited involvement in Sealey's dental care. As a dental assistant, Defendant Rosebrook does not examine, diagnose, or provide treatment. (ECF No. 28-13, PageID.192.) Defendant Rosebrock describes her job

---

[1] Defendants first argue that a simple tooth ache caused by a broken filling that can be treated with over-the-counter medications is not a serious medical need necessary to satisfy a claim under Eighth Amendment. (ECF No. 28, PageID.124-126.) Defendants cite to *Murphy v. Joboulian*, 1:15-cv-657, 2017 WL 4117893, *3-4 (W.D. Mich., Mar. 8, 2017) adopted by 2017 WL 4099506 (W.D. Mich. Sept. 15, 2017.) In this case, Sealey has alleged that he needlessly suffered pain at least between January and April of 2018. (ECF No. 28-6, PageID.151-152.) Sealey says that his tooth was "swollen and infected." (ECF No. 9, PageID.230.) In the opinion of the undersigned, a genuine issue of material fact exists regarding whether, Sealey presented a serious medical need.

11

duties as providing "chair-side assistance of the dentist, sterilizing instruments, taking x-rays, logging treatment data, maintaining patient records, answering the telephone, scheduling appointments, triaging dental kites, and ordering dental supplies." (*Id.*)  URF had dentists available twice per month between January and April of 2018.  (*Id.*)

On January 23, 2018, Defendant Rosebrock placed Sealey on the dental examination list after she received a request for a dental care.  (*Id.*)  Again, on January 30, 2018, Defendant Rosebrock placed Sealey on the dental examination list after she received a request for dental care.  (*Id.*)  Sealey received other dental care from health care staff, and Defendant Rosebrock did not receive another request for dental care from Sealey until April 10, 2018, when she again placed Sealey on the dental examination list.  (*Id.*)  Defendant Rosebrock assisted Dr. Weiss on April 11, 2018, while Dr. Weiss examined Sealey and made a recommendation for extraction of the tooth.  (*Id.*, PageID.193.)  Defendant Rosebrock did not examine Sealey and did not make the recommended treatment plan.  (*Id.*)

In the opinion of the undersigned, Defendant Rosebrock is entitled to qualified immunity from liability because Sealey has failed to show that she acted with deliberate indifference to his serious medical needs.  Sealey has failed to show that Defendant Rosebrock was responsible for any delay in receiving dental care or for the tooth extraction recommendation made by the Dr. Weiss.  Moreover, Sealey's tooth was completely restored.  Sealey has failed to satisfy *Napier* and *Blackmore* by placing verifying medical evidence in the record to show the detrimental effect of the

delayed or inadequate treatment. For these reasons, it is respectfully recommended that Defendant Rosebrock be dismissed from this lawsuit.

## 2. Defendant Lamb

Defendant Lamb only responded to Sealey's grievances and has less involvement in Sealey's dental care than Defendant Rosebrock. Sealey is suing Defendant Lamb because she is a registered nurse and the Quality Assurance Clinic Assistant for the Bureau of Health Care Services within the MDOC. (ECF No. 28-11, PageID.156.) Sealey explained that "she is the top lady." (ECF No. 28-11, PageID.186.)

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *Leach*, 891 F.2d at 1246. However, the failure of a supervisor to supervise, control or train the offending employee is not actionable

13

absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Also, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

Defendant Lamb's responsibilities include investigating and responding to Step II grievances involving medical and dental issues. (ECF No. 28-11, PageID.167.) Defendant Lamb's only involvement in this matter was in responding to two Step II grievances filed by Sealey. (*Id.*, PageID.167-168.) In the opinion of

the undersigned, Defendant Lamb is entitled to the defense of qualified immunity due to her lack of personal involvement in Sealey's dental care and treatment.

## V. State Law Gross Negligence

Sealey brings state law claims of gross negligence against the Defendants. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). The Court could exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id., see* 28 U.S.C. § 1367(c)(3) (stating district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (noting district court abused its discretion in retaining jurisdiction over "state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended"). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v.*

*Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).    It is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

### VI.   Recommendation

It is respectfully recommended that the Court grant the motion for summary judgment.    If the Court accepts this recommendation, this case will be dismissed.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    May 22, 2020          /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U.S. MAGISTRATE JUDGE